IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTIN DAILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-3027 |
| | § | |
| SHINTECH INC., and | § | |
| MICHELLE HICKNER. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant Shintech Inc.'s ("Shintech") Motion for Partial Summary Judgment (Doc. 41). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Shintech's motion be **GRANTED**.

**I.  Case Background**

Plaintiff Martin Dailey ("Dailey") filed this employment discrimination action against his former employer, Shintech, and its employee, Michelle Hickner ("Hickner"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.[2]

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 27.

[2]     Because these statutory bases are functionally identical for the purposes of Dailey's claims, the court shall hereinafter refer only to Title VII. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 402 n.2 (5th Cir. 1999) ("When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability.").

A.    **Factual Background**

Dailey, who is African-American, began his employment with Shintech as a process technician in 1990.[3]  Shintech is engaged in the production of polyvinyl chloride ("PVC") and caustic soda.[4] Hickner is the Human Resources Manager at Shintech.[5]

Dailey's suit concerns events that occurred between August 2010 and his termination in July 2012.  On August 30, 2010, Dailey told Hickner that a co-worker, Lisa Larson ("Larson"), had been completing equipment safety forms without taking readings or samples.[6]  Dailey also believed that Larson was receiving preferential treatment because of her friendship with their supervisor, James Tidwell ("Tidwell").[7]

On September 1, 2010, another of Dailey's co-workers, Curtiss Berry ("Berry"), complained to Tidwell that Dailey had been refusing to speak with him during their shifts.[8]  Tidwell approached Dailey about the issue and, according to Tidwell, Dailey

---

[3]    See Doc. 1, Pl.'s Orig. Compl. p. 4; Doc. 41-2, Ex. 2 to Shintech's Mot. for Partial Summ. J, Decl. of Hickner ¶ 2.

[4]    See Doc. 41-2, Ex. 2 to Shintech's Mot. for Partial Summ. J., Decl. of Hickner ¶ 2.

[5]    See id. at ¶ 1.

[6]    See Doc. 43-1, App. B to Pl.'s Resp. to Shintech's Mot. for Partial Summ. J.,  Dep. of Hickner pp. 17, 34.

[7]    See Doc. 45-1, Ex. E to Shintech's Reply in Support of Mot. for Partial Summ. J., Dep. of Dailey p. 167.

[8]    See Doc. 41-6, Ex.21 to Shintech's Mot. for Partial Summ. J.. Report of Tidwell.

stated that he refused to work with Berry and then walked away from Tidwell.[9]  At his deposition, Dailey admitted that he had ignored Berry because Berry had "smarted off" to him about something not work-related.[10]  Dailey further stated that he told Tidwell that he would speak to Berry about anything work-related and that Tidwell then walked away from him.[11]

On September 2, 2010, Dailey met with Hickner, Tidwell, and Mike Gassen ("Gassen"), the plant superintendent.  Dailey received a "Corrective Action Notice" stating that he "must immediately begin communicating with everyone on his shift including his supervisor."[12]  The notice further stated that "[f]ailure to improve behavior and work with other employees will result in further corrective action up to and including termination."[13]  At the meeting, Dailey's request that he be transferred to another shift was denied.[14]

The following week, Dailey attended "fire school," a fire-

---

[9]    See Doc. 41-6, Ex. 21 to Shintech's Mot. for Partial Summ. J., Report of Tidwell.

[10]    See Doc. 43-1, App. E to Pl.'s Resp. to Shintech's Mot. for Partial Summ. J., Dep. of Dailey p. 235.

[11]    See Doc. 43-1, App. E to Pl.'s Resp. to Shintech's Mot. for Partial Summ. J., Dep. of Dailey p. 17.

[12]    Doc. 41-4, Ex. 15 to Shintech's Mot. for Partial Summ. J., Corrective Action Notice Dated Sept. 2, 2010.

[13]    Id.

[14]    See Doc. 43-1, App. E to Pl.'s Resp. to Shintech's Mot. for Partial Summ. J., Dep. of Dailey p. 19.

fighting training program conducted at a separate facility.[15]
During the training, the program coordinator, Tom Indian
("Indian"), called Hickner to report that Dailey was being unruly
and uncooperative.[16] Indian stated that Dailey had been upset about
having to wait while others in the course completed a task and
started yelling profanities.[17]  Indian reported that when he
approached Dailey and asked him to calm down, Dailey responded that
he was not going to participate in the training.[18]

On September 13, 2010, Dailey met with Hickner, Gassen, and
Tidwell to discuss his behavior at fire school.[19]  Dailey denied
having acted inappropriately.[20]  Nonetheless, Dailey received a
second Corrective Action Notice on September 22, 2010, which
referenced the incident at fire school and stated that Dailey would
face further discipline and possibly termination should he fail to
"improve [his] behavior and work with other employees."[21]

On October 1, 2010, Dailey submitted a written workplace

---

[15]    See Doc. 41-2, Ex. 4 to Shintech's Mot. for Partial Summ. J., Dep.
of T. Indian pp. 5-7.

[16]    See id. pp. 44-47.

[17]    See id. pp. 26-28, 44-47.

[18]    See id. pp. 28-29, 44-47.

[19]    See Doc. 41-1, Ex. 1 to Shintech's Mot. for Partial Summ. J., Dep.
of Dailey pp. 61-63.

[20]    See Doc. 43-1, App. E to Pl.'s Resp. to Shintech's Mot. for Partial
Summ. J., Dep. of Dailey pp. 46, 49.

[21]    See Doc. 41-4, Ex. 14 to Shintech's Mot. for Partial Summ. J.,
Corrective Action Notice Dated Sept. 22, 2010.

complaint to Shintech's human resources department.[22]  Dailey stated that he believed Hickner had discussed his complaint about Larson with Gassen and that Gassen and Tidwell had since "developed a hostile attitude and environment."[23]  On the basis of "the actions taking place within the workplace," Dailey complained of "Hostile Environment; Retaliation; and Discrimination."[24]

Shintech began an investigation into Dailey's complaint and interviewed Dailey on October 12, 2010.[25]  At the interview, Dailey stated that he did not want to speak about the issues raised in his complaint.[26]  In a letter dated October 18, 2010, Hickner informed Dailey that the investigation was closed "[b]ecause you did not wish to provide us with information or facts regarding your concerns."[27]

Several months passed without incident.  Then, on the night of March 17, 2011, Dailey was called into work and instructed to phone

---

[22]     See Doc. 41-5, Ex. 18 to Shintech's Mot. for Partial Summ. J., Workplace Complaint.

[23]     Id.

[24]     Id.

[25]     See Doc. 41-1, Ex. 3 to Shintech's Mot. for Partial Summ. J., Dep. of Hickner pp. 25, 28-31; Doc. 41-5, Ex. 19 to Shintech's Mot. for Partial Summ. J., Letter from Hickner to Dailey Dated Oct. 18, 2010.

[26]     See Doc. 41-1, Ex. 3 to Shintech's Mot. for Partial Summ. J., Dep. of Hickner pp. 25, 28-31.

[27]     Doc. 41-5, Ex. 19 to Shintech's Mot. for Partial Summ. J., Letter from Hickner to Dailey Dated Oct. 18, 2010.

one of the other on-call employees to report to the plant.[28]
Although Larson was Dailey's "on-call partner," Dailey chose to
notify a different employee because he believed that Larson had a
foot injury at the time.[29]  The next morning, Larson yelled at
Dailey for not calling her, and Dailey "put [his] hand up" and told
her to discuss the issue with their supervisor.[30]  A co-worker,
Manual Salas ("Salas"), then grabbed Dailey's hand and threatened
to "kick [Dailey's] . . . ass."[31]  Although Salas and Larson spoke
to a supervisor about the argument, Shintech's human resources
department was not made aware of the incident at the time.[32]

Over a year later, on June 29, 2012, Dailey and another co-
worker, Gary Mathews ("Mathews") got into a heated confrontation
after the two had a disagreement about on-call duty.[33]  Dailey and
Mathews gave differing accounts regarding how the argument

---

[28]    See Doc. 41-1, Ex. 1 to Shintech's Mot. for Partial Summ. J., Dep.
of Dailey pp. 113-14.

[29]    See id.; Doc. 41, Shintech's Mot. for Partial Summ. J. p. 15.

[30]    Doc. 41-1, Ex. 1 to Shintech's Mot. for Partial Summ. J., Dep. of
Dailey p. 117; see also 43-1, App. O to Pl.'s Resp. to Shintech's Mot. for
Partial Summ. J., Dep. of C. Browning pp. 13-14.

[31]    Doc. 41-1, Ex. 1 to Shintech's Mot. for Partial Summ. J., Dep. of
Dailey p. 117.

[32]    Doc. 41-2, Ex. 2 to Shintech's Mot. for Partial Summ. J., Decl. of
Hickner ¶ 9.

[33]    See Doc. 41-1, Ex. 1 to Shintech's Mot. for Partial Summ. J., Dep.
of Dailey p. 127; Doc. 41-4, Ex. 11 to Shintech's Mot. for Partial Summ. J.,
Written Statement of Mathews Dated June 29, 2012; Doc. 41-4, Ex. 13 to Shintech's
Mot. for Partial Summ. J., Written Statement of Dailey Dated June 29, 2012.

started.[34]  It is undisputed, however, that they yelled at each other and that at one point Dailey said, "Get out of my face, I will mop the floor with you."[35]  Mathews further alleged that Dailey said he would "kick [Mathews'] ass" and "break [his] neck."[36]

Hickner began an investigation into the incident, during which she became aware of the prior altercation between Dailey and Salas.[37]  Shintech terminated Dailey's employment on July 5, 2012.[38] In a termination letter, Hickner explained that the decision resulted from Dailey's having been "counseled repeatedly concerning [his] inability to work with others and professionalism in the workplace" and having "verbally threatened bodily injury to [Mathews]."[39]  On July 13, 2012, Shintech terminated Salas's employment after determining that he had threatened violence during the altercation with Dailey in March 2011.[40]

---

[34]     See Doc. 41-4, Ex. 11 to Shintech's Mot. for Partial Summ. J., Written Statement of Mathews Dated June 29, 2012; Doc. 41-4, Ex. 13 to Shintech's Mot. for Partial Summ. J., Written Statement of Dailey Dated June 29, 2012.

[35]     See Doc. 41-4, Ex. 11 to Shintech's Mot. for Partial Summ. J., Written Statement of Mathews Dated June 29, 2012; Doc. 41-4, Ex. 13 to Shintech's Mot. for Partial Summ. J., Written Statement of Dailey Dated June 29, 2012.

[36]     See Doc. 41-4, Ex. 11 to Shintech's Mot. for Partial Summ. J., Written Statement of Mathews Dated June 29, 2012.

[37]     See Doc. 41-2, Ex. 2 to Shintech's Mot. for Partial Summ. J., Decl. of Hickner ¶ 10.

[38]     See Doc. 41-5, Ex. 20 to Shintech's Mot. for Partial Summ. J., Termination Letter.

[39]     Id.

[40]     See Doc. 41-2, Ex. 2 to Shintech's Mot. for Partial Summ. J., Decl. of Hickner ¶ 10.

**B.    Procedural Background**

On October 10, 2012, Dailey filed this lawsuit, alleging discrimination based on race and retaliation, as well as a state law claim of defamation.[41]    On August 30, 2013, the court recommended that Dailey's defamation claim be dismissed.[42]    The recommendation was adopted on September 19, 2013.[43]   Shintech filed the pending motion for partial summary judgment on January 15, 2014.[44]   Dailey responded on February 5, 2014, and Shintech filed a reply on February 10, 2014.[45]

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540–41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th

---

[41]    See Doc. 1, Pl.'s Orig. Compl.

[42]    See Doc. 31, Mem. & Recommendation Dated Aug. 30, 2013.

[43]    See Doc. 32, Order Dated Sept. 19, 2013.

[44]    See Doc. 41, Shintech's Mot. for Partial Summ. J.

[45]    See Doc. 43, Pl.'s Resp. to Shintech's Mot. for Partial Summ. J.; Doc. 45, Shintech's Reply in Support of Mot. for Partial Summ. J.

Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore

9

v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. City of Henderson, Tex., 286 F.3d 264, 269 (5th Cir. 2002).

In the absence of summary judgment evidence that an actual controversy exists, the court cannot assume that the nonmoving party can or will prove the necessary facts at trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

"[U]nsubstantiated assertions are not competent summary judgment evidence." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)(citing Celotex, 477 U.S. at 324). Furthermore, it is not incumbent on the court to search the record for triable issues. Id. The duty to identify evidence and its connection to the issues raised falls squarely on the party opposing summary judgment. Id. Under the Federal Rules, the court need only

consider cited materials in deciding whether a party's evidence satisfies that party's summary judgment burden.  Fed. R. Civ. Proc. 56(c)(3).

### III. Analysis

Dailey alleges that he was terminated in retaliation for his complaints to Hickner about Larson, Gassen, and Tidwell.  Shintech argues that it is entitled to summary judgment because Dailey cannot produce evidence capable of establishing a causal connection between his complaint of discrimination and his termination.

Title VII's anti-retaliation clause forbids an employer from acting in a way that discriminates against an employee because he has participated in a Title VII proceeding or has opposed a discriminatory practice.  42 U.S.C. § 2000e-3(a); <u>Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.</u>, 555 U.S. 271 (2009).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.  <u>Royal v. CCC & R Tres Arboles, L.L.C.</u>, 736 F.3d 396, 400 (5th Cir. 2013). A plaintiff has engaged in a protected activity if he "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII" or "opposed any practice made an unlawful employment practice by Title VII."

Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102
F.3d 137, 140 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3)
(internal quotation marks omitted).

If a plaintiff establishes a prima facie case, an inference of
retaliation is raised, and the burden shifts to the defendant to
proffer a legitimate, non-retaliatory reason for its actions. See
Feist v. State of La., 730 F.3d 450, 454 (5th Cir. 2013). If the
defendant satisfies this burden, then the inference of retaliation
dissolves, and the burden shifts back to the plaintiff to
demonstrate that the defendant's reason is actually a pretext for
retaliation. See id. To make this showing, the plaintiff must
demonstrate that the adverse action would not have occurred "but
for" the employer's retaliatory motive. See id. (citing Univ. of
Tex. Sw. Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 2533
(2013)). "In order to avoid summary judgment, the plaintiff must
show 'a conflict in substantial evidence' on the question of
whether the employer would not have not taken the action 'but for'
the protected activity." Id. (quoting Long v. Eastfield College,
88 F.3d 300, 308 (5th Cir. 1996)).

Shintech concedes that Dailey engaged in protected activity by
making the October 1, 2010 complaint and suffered an adverse
employment action when his employment was terminated. Shintech
argues that Dailey nonetheless cannot establish a prima facie case
of retaliation because the facts do not show a causal connection

between his termination and the October 2010 complaint of
discrimination. Dailey contends that a fact issue exists as to
causation and that his August 30, 2010 complaint about Larson also
qualifies as protected activity.

Dailey points to no evidence indicating that he complained of
discrimination in his initial complaint about Larson.  Indeed, he
concedes in his response to Shintech's motion that he "did not
expressly state on August 30, 2010[,] that Shintech's preferential
treatment of Larson was due to her being white."[46]  Therefore, the
court finds that Plaintiff has failed to establish that he
participated in a protected activity when he complained about
Larson's favorable treatment in August 2010 and will only consider
his October 1, 2010 workplace complaint as satisfying the first
prong of a prima facie case of retaliation.  See Harris-Childs v.
Medco Health Solutions, Inc., 169 F. App'x 913, 916 (5th Cir. 2006)
(unpublished) (affirming district court's finding that plaintiff
failed to demonstrate that she engaged in a protected activity
under Title VII because the plaintiff did "not allege that she
specifically complained of racial or sexual harassment, only
harassment").

A plaintiff who has alleged retaliation may satisfy the causal
connection element by showing "[c]lose timing between an employee's
protected activity and an adverse action against him."  McCoy v.

---

46      Doc. 43, Pl.'s Resp. to Shintech's Mot. for Partial Summ. J. p. 17.

City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).  "Such

temporal proximity must generally be 'very close.'"  Feist, 730

F.3d at 454 (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S.

268, 273-74 (2001).  The Fifth Circuit has found, for example, that

a five month lapse is not sufficiently close without other evidence

of retaliation.  Raggs v. Miss. Power & Light Co., 278 F.3d 463,

472 (5th Cir. 2002).   Such evidence may include "an employment

record that does not support dismissal, . . . an employer's

departure from typical policies and procedures," or "[d]isparate

treatment of similarly situated employees."   Feist, 730 F.3d at

454-55 (citing Schroeder v. Greater New Orleans Fed. Credit Union,

664 F.3d 1016, 1024 (5th Cir. 2001); Bryant v. Compass Group USA

Inc., 413 F.3d 471, 478 (5th Cir. 2005).

Dailey's termination on July 5, 2012, occurred twenty-one

months after his October 1, 2010 complaint of discrimination, a

time period insufficient to establish a causal link without

additional evidence.  See Raggs, 278 F.3d at 472.  Dailey argues

that such evidence exists in the form of disparate treatment.

Specifically, Dailey argues that Shintech's failure to discipline

Larson for improperly completing safety forms or her behavior

during the March 18, 2011 incident and its delay in disciplining

Salas are examples of disparate treatment.

To establish disparate treatment, Dailey must show that

Shintech gave preferential treatment to another employee under

"nearly identical" circumstances.   <u>Okoye v. Univ of Tex. Houston</u>
<u>Health Sci. Ctr.</u>, 245 F.3d 507, 514 (5th Cir. 2001).   Because the
alleged falsification of safety forms is not "nearly identical" to
threatening physical violence, any failure on the part of Shintech
to discipline Larson arising out of that allegation does not
constitute disparate treatment.   Moreover, Dailey has not
introduced evidence that Shintech concluded that Larson had
violated company policy.   To the contrary, Hickner testified that
the company undertook an investigation into Dailey's complaints but
did not find proof that Larson had falsified safety forms as he had
alleged.[47]   Turning to the March 18, 2011 incident, there is no
allegation that Larson threatened physical violence during this
altercation.   Therefore, Shintech's failure to discipline Larson
does not raise a fact issue of disparate treatment.

As for company's treatment of Salas, Shintech introduced
evidence that it terminated his employment for the same reason as
it terminated Dailey's.   Dailey argues that Shintech's delay in
disciplining Salas is evidence of disparate treatment.   However,
Hickner testified that the company's human resources department was
not made aware of the March 18, 2011 incident until investigating
Dailey's June 2012 altercation with Matthews.[48]   Consistent with

---

[47]    <u>See</u> Doc. 45-1, Ex. F to Shintech's Reply in Support of Mot. for
Partial Summ. J., Dep. of Hickner p. 112.

[48]    <u>See</u> Doc. 41-2, Ex. 2 to Shintech's Mot. for Partial Summ. J, Decl.
of Hickner ¶ 9.

this claim, Dailey testified that he had no discussions with the human resources department following the Salas incident.[49] Dailey offers no other evidence of a causal connection between his complaint of discrimination and his termination. Therefore, the court finds that Dailey cannot establish the causal link necessary to establish a prima facie case of retaliation.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Shintech's motion be **GRANTED**. If this recommendation is adopted, Dailey's claim of race discrimination under Title VII and 42 U.S.C. § 1981 should be set for trial.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

---

[49]     See Doc. 41-1, Ex. 1 to Shintech's Mot. for Partial Summ. J., Dep. of Dailey p. 144.

**SIGNED** in Houston, Texas, this <u>11th</u> day of July, 2014.

_____
U.S. MAGISTRATE JUDGE